**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LINDSEY A. HENDERSON,

               Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

            Defendant.

Case No. 22 C 3890

Magistrate Judge Sunil R. Harjani

### MEMORANDUM OPINION AND ORDER

Plaintiff Lindsey H.[1] seeks to overturn the Commissioner of Social Security Administration's decision denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act. Lindsey requests reversal and remand [12], and the Acting Commissioner moves for summary judgment affirming the decision [18][19]. For the reasons discussed below, the Court affirms the ALJ's decision.

### Background

Lindsey, currently 36 years old, filed DIB and SSI applications on September 27, 2019, alleging an onset date of March 27, 2018. R. 24. Lindsey alleged disability due to bipolar disorder, generalized anxiety disorder, panic disorder, and alcohol use disorder. *Id.* at 27. Lindsey's treatment included therapy and various prescription medications. *Id.* at 29. Lindsey completed high school and college and previously worked as a server through March 2019. *Id.* at 279.

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by first name and the first initial of last name or alternatively, by first name.

Lindsey's claims were initially denied on July 29, 2020, and upon reconsideration on November 10, 2020. *Id.* at 24. Upon written request, on May 14, 2021, the ALJ held a telephonic hearing, attended by Lindsey, counsel, and vocational expert ("VE") Sara Gibson. *Id.* at 42. On August 26, 2021, the ALJ found Lindsey not disabled. *Id.* at 24-36. The opinion followed the required five-step process. 20 C.F.R. § 404.1520. The ALJ found Lindsey had the following severe impairments: bipolar I disorder, generalized anxiety disorder, panic disorder, and alcohol use disorder.[2] R. 27. The ALJ concluded that Lindsey did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. *Id.* at 27-29. The ALJ specifically considered listings 12.04 and 12.06. *Id.* Under the "Paragraph B" analysis, the ALJ found Lindsey had moderate limitations in understanding, remembering or applying information, interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself. *Id.* The ALJ found no mild, marked, or extreme limitations. *Id.*

The ALJ then determined Lindsey had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with non-exertional limitations as follows: (1) can perform simple, routine, and repetitive tasks; (2) can make simple work related decisions; (3) can work at a consistent pace throughout the workday but cannot perform production rate/pace work where tasks must be done quickly such as assembly line work; (4) can occasionally interact with supervisors, co-workers, and the public incidental to the work being performed and no group or team-based activities; and (5) can respond appropriately to occasional, gradual changes in a routine work setting. *Id.* at 29-34. The ALJ concluded Lindsey is unable to perform past relevant work,

---

[2] In addition to Lindsey's severe impairments, the ALJ found a "Bartholin cyst was annotated in the medical records." However, the medical records did not document ongoing complaints or limitations in Lindsey's ability to perform basic work activities from the impairment, thus it was not severe. R. 27.

but there were jobs that existed in significant numbers in the national economy Lindsey could perform, including kitchen helper, cleaner, and laundry laborer. *Id.* at 34-35. As a result, the ALJ found Lindsey not disabled. *Id.* at 35-36. The Appeals Council denied Lindsey's request for review. *Id.* at 1-3.

## Discussion

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quotation marks omitted). In

3

reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

In support of her request for reversal and remand, Lindsey argues the ALJ: (1) erred in finding the medical source opinion from the treating physician, Dr. Childers, unpersuasive; (2) failed to properly construct an RFC; and (3) erred in finding that Lindsey's subjective symptoms were not consistent with the totality of the evidence.[3] Having considered these arguments and the record, the Court finds the ALJ did not commit reversible error and the ALJ's decision is supported by substantial evidence.

## I. Treating Psychiatrist Opinion

Lindsey first challenges the ALJ's decision to reject the opinion of her treating psychiatrist, Dr. Carol Lynn Childers. Within this argument, and in summary, Lindsey claims: (1) the ALJ improperly evaluated Dr. Childers' opinion by failing to consider certain evidence; and (2) the ALJ misread Dr. Childers' opinion. Doc. [12] at 5-8; Doc. [20] at 1-6.[4] The Court disagrees.

---

[3] The Court notes claimant has taken a kitchen-sink approach to her briefing, seemingly challenging everything uttered by the ALJ often with one or two sentences and a citation. As a result, the Court has had to parse out the key arguments that have been properly developed in this opinion and that warrant the Court's attention. To the extent that the Court has not addressed something raised by Plaintiff, the Court deems it waived for failure to properly develop the argument. *See Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018) (perfunctory and underdeveloped arguments are waived).

[4] The Court notes Plaintiff's Reply brief starts on an opening unnumbered page and the second page is marked as page "1." Doc. [20]. In the interest of clarity, the Court is citing to the unmarked page as 1, page 1 as 2, and so on.

On December 10, 2019, Dr. Childers completed a Mental Impairment Questionnaire (RFC and Listings) Report ("MIQ"). R. 677-79. On the MIQ, Dr. Childers listed Lindsey's mental health and substance use disorders as Bipolar I disorder, generalized anxiety disorder, panic disorder, and alcohol use disorder. *Id.* at 677. She further listed psychosocial and environmental problems as "inability to work, poverty, stressful interpersonal relationship, [and] trauma history." *Id.* She identified Lindsey's signs and symptoms as poor memory, sleep disturbance, decreased energy, manic syndrome, mood disturbance, recurrent panic attacks, substance dependence, persistent irrational fears, difficulty thinking or concentrating, feelings of guilt/worthlessness, generalized persistent anxiety, suicidal ideation or attempts, psychomotor agitation or retardation as well as a history of manic and depressed moods. *Id.* With respect to mental abilities and aptitudes needed to do unskilled work, Dr. Childers opined Lindsey had a moderate limitation in her ability to: remember location and work-like procedures, understand, remember and carry out short and simple instructions; make simple work-related decisions; ask simple questions or request assistance; respond appropriately to changes in a routine work setting, and travel in unfamiliar places or use public transportation. *Id.* at 678. With respect to the other ten mental abilities needed to do unskilled work, Dr. Childers found marked limitations. *Id.* Dr. Childers opined Lindsey's symptoms would interfere with the attention and concentration needed to perform even simple tasks 21% or more during a typical workday. *Id.* at 679. Dr. Childers then rated Lindsey in the four functional limitations of Paragraph B and concluded that Lindsey had marked limitations in understanding, remembering, or applying information and interacting with others, an extreme limitation in concentration, persistence or maintaining pace, and moderate limitation in adapting or managing oneself. *Id.* The ALJ found Dr. Childers' opinion unpersuasive because it was inconsistent with her own treatment notes and the record. *Id.* at 27-29. The ALJ determined the

5

evidence in the record, including part of the state agency psychological consultants' opinion, supported a conclusion that Lindsey had moderate limitations in all four areas of mental functioning. *Id.*

The ALJ's evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ need only articulate "how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). The regulations direct the ALJ to consider the persuasiveness of medical opinions using several listed factors. *See* 20 C.F.R. § 404.1520c(a), (c). While an ALJ must explain how they considered the factors of supportability and consistency in their decision, they are not required to explain how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

First, Lindsey argues the ALJ discounted crucial evidence in dismissing Dr. Childers' opinion. In support, Lindsey alleges that (1) the record corroborates the restrictions and limitation in Dr. Childers' opinion as well as the finding that episodic exacerbations might lead to periods of absenteeism, (2) the ALJ failed to discuss Lindsey's frequent treatment with Dr. Childers or that Dr. Childers was responsible for Lindsey's medication, (3) the ALJ ignored entire lines of contrary evidence by cherry-picking, and (4) the ALJ failed to explain why findings or normal evaluations were more persuasive than the more abnormal clinical findings in the record. Doc. [12] at 5-7; Doc. [20] at 1-4. Lindsey points to various parts of the record indicating struggles with low energy, tearfulness, desire to stay in bed and depression. *Id.*

6

Contrary to Lindsey's arguments, this is not a case where the ALJ failed to discuss the contents of Dr. Childers' opinion, failed to explain why certain findings were persuasive, or ignored entire lines of contrary evidence. "The court applies a common-sense reading to the entirety of an ALJ's decision." *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019). In doing so, the Court reads "the ALJ's decision as a whole." *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (explaining "it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five"). "[An] ALJ is not required to mention every piece of evidence." *Combs v. Kijakazi*, 69 F.4th 428, 435 (7th Cir. 2023).

Here, the ALJ minimally articulated her reasoning for finding Dr. Childers' opinion unpersuasive by identifying discrepancies between Dr. Childers' opinion in the MIQ, on the one hand, and Dr. Childers' treatment notes, the record and Lindsey's personal attestations, on the other. *See Rice*, 384 F.3d at 371 ("An ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.") (cleaned up); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (minimal articulation is "a very deferential standard that we have, in fact, deemed 'lax'"). Lindsey saw Dr. Childers' from August 2018 to November 2019.[5] According to Dr. Childers' treatment notes, Lindsey had an onset of panic attacks at age 15,

---

[5] Lindsey alleges that the ALJ committed reversible error in failing to discuss Lindsey's frequent treatment with Dr. Childers or that Dr. Childers was responsible for Lindsey's medication. Compared to the approximately 950-page record, Lindsey's treatment notes with Dr. Childers are only 51 pages beginning in August 2018 and ending in November 2019. R. 701, 773. In that fifteen-month period, Lindsey had approximately nine appointments with Dr. Childers, seven of which the ALJ cited to and discussed directly in their opinion. *See generally id.* at 680-858. Lindsey also met with other physicians at Heartland Health Center including ten appointments with Dr. Tiffany Nguyen, and five with Anne Flosi, family nurse practitioner (FNP) and Lindsay Caine-Conley, certified physician assistant (PA-C). *Id.* Dr. Childers was not solely responsible for Lindsey's medication. As the ALJ discussed, Dr. Vivien Eisenberg prescribed Lindsey Abilify, decreased Trileptal, continued her Prozac and tapered her off Klonopin. *Id.* at 31 (citing 891). Additionally, PA-C Lindsay Caine-Conley, continued Lindsey on Abilify in October 2020. *Id.* (citing 933). The Court need not remand because the ALJ did not mention the frequent treatment with Dr. Childers or that Dr. Childers was responsible for Lindsey's medication because Lindsey did not see Dr. Childers' frequently compared to other providers and multiple providers were responsible for Lindsey's medication.

diagnosed at 17. R. 27-34 (*citing* 769). She was not originally treated with medicine but coped through yoga and working out. *Id.* Dr. Childers' notes, cited by the ALJ, further state:

- On August 21, 2018: Dr. Childers diagnosed Lindsey with panic disorder, alcohol use disorder (in remission), and PTSD with night terrors. Dr. Childers' prescribed medication; *Id.* at 27-34 (*citing* 769).

- On October 18, 2018: Lindsey reported relapsing into alcohol but began AA and had less cravings and triggers on Vivitrol; *Id.* (*citing* 764).

- On November 15, 2018: "mood stable and good" "no si[6]" and improvements in falling asleep. *Id.* (*citing* 751). Lindsey reported alcohol use two days prior to Dr. Childers' who restarted Lindsey on Naltrexone; *Id.*

- On December 28, 2018: AA meetings were "super helpful" "no si;"[7] *Id.* (*citing* 746).

- On February 7, 2019: Lindsey stopped therapy because it was "difficult dealing with past sexual trauma;" *Id.* (*citing* 742).

- After reporting increased depression and anxiety on June 6, 2019, on July 11, 2019: Lindsey was "better" after experiencing anxiety and exhaustion tapering off medication, "mood is good" "mood: pleasant" and reported no suicidal ideation; and *Id.* (*citing* 714-15).

- After reporting increased depression, loss of interest and passive thoughts of having a car wreck on August 22, 2019, on November 14, 2019: "patient appears more relaxed, less tightly wound, less having to appear 'perfect;' NO SI" "patient no longer crying. no si." "mood is better." *Id.* (*citing* 697-98).

---

[6] "si" stands for suicidal ideation.

[7] Lindsey argues in the reply that Defendant did not address or explain how the finding of AA meetings being "helpful" was inconsistent with the MIQ limitations. This is not the case. When determining Paragraph B limitations, the ALJ discussed how Lindsey socializes with women from AA and how that, along with other evidence in the record, supported a moderate limitation in interacting with others, instead of a marked limitation, as Dr. Childers' MIQ suggested. R. 28. The ALJ then evaluated Lindsey's RFC and discussed AA meetings being "super helpful" when looking at the intensity, persistence, and limiting effects of her symptoms. *Id.* at 29-34. The ALJ observed that with AA meetings, talking daily with a sponsor, and medication, Lindsey had not used alcohol in over a year prior to hearing. Thus, the ALJ observed that Lindsey's statements regarding intensity, persistence and limiting effect of her alcohol use disorder were not entirely consistent with the record. *Id.* at 32. The ALJ minimally articulated their reasoning and the Court can trace the path of the ALJ's reasoning.

The ALJ then reviewed other medical records observing these were inconsistent with Dr. Childers' MIQ. *Id.* at 27-34.

- On April 3, 2018, Lindsey went in for an office visit with Dr. Tiffany Nguyen. *Id.* at 30 (*citing* 796-99). Regarding alcohol abuse it was observed Lindsey had relapsed two weeks prior but had been sober for 16 days. *Id.* During this visit Lindsey scored 0 on the Depression Screening - PHQ-2 and on the Anxiety Screening - GAD-2. *Id.* Lindsey reported having no depression, anxiety or agitation. *Id.*

- Lindsey further scored 0 on the PHQ-2 and GAD-2 during office visits on August 10 and July 26, 2018. *Id.* (*citing* 775, 780).

- During a May 1, 2018, office visit Lindsey had no psychiatric complaints, was negative for depression, anxiety, agitation, and suicidal ideations, had a normal mood, affect and behavior. *Id.* at 30-31 (*citing* 459). She was also oriented to time, place and person. *Id.*

- In October 2018 and May 2019, Lindsey again reported no depression, anxiety or agitations. *Id.* at 31 (*citing* 730, 761). Lindsey was oriented to time, place and person, exhibiting intact judgment and insight. *Id.*

- In June 2019, Lindsey was diagnosed with Bipolar I disorder. *Id.* (*citing* 723). In July 2019 Lindsey reported being sober and feeling better overall, with good mood and sleep. *Id.* (*citing* 714).

- On December 23, 2019, Anne Flosi, FNP, observed that Lindsey was oriented to time, place and person. *Id.* (*citing* 688).

- In March 2020, Lindsey's record indicated a relapse into alcohol one month prior. *Id.* (*citing* 889). However, Lindsey reported Trileptal was helpful for mania. *Id.*

- In June 2020, it was observed that Lindsey's panic symptoms were lessening, Lindsey had been sober for three months and was continuing psychiatric medications. *Id.* (*citing* 886).

- At a psychiatric follow up in August 2020 with Lindsay Caine-Conley, PA-C, Lindsey reported feeling well with the medications and denied having panic attacks or increased anxiety. *Id.* (*citing* 901). Lindsey reported going to AA meeting and denied hopelessness and low mood. *Id.*

- In October 2020, Lindsey's mental status examination showed an anxious mood and that Lindsey had increase in anxiety and panic, but was oriented to person, place, time, situation and reality with mental processes intact. *Id.* (*citing* 932). Lindsey was restarted on Abilify and told to continue in person AA meetings. *Id.* Notably, there are no records of medical visits in 2021. *Id.*

The ALJ also discussed Lindsey's daily activities, which were found to be not as limited as expected given the complained of disabling symptoms and limitations. *Id.* at 33. The ALJ considered that Lindsey reported feeding and taking out her pet, helping prepare food, doing laundry and helping clean a few times a week for a few hours, making her bed, shopping for groceries for one hour every other week, caring for her boyfriend's daughter, spending time with her boyfriend's parents, running outside, going to a gym, watching television, attending classes online for her Master's degree, and working as a server.[8] *Id.* (*citing* 315-17, 742, 746, 751, 765).

In this case, the ALJ minimally articulated her reasoning. *See Rice*, 384 F.3d at 371. The ALJ's opinion that Dr. Childers' MIQ was unpersuasive is supported by the medical record. The evidence exhibits inconsistencies with Dr. Childers' treatment observations, where Lindsey was repeatedly shown to be in a good, stable mood, with no suicidal ideation, and the record, where Lindsey denied having anxiety, depression, panic, or suicidal ideations. *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (substantial evidence supports ALJ's finding that "medical records, including [the providers'] own records, undermined the doctor's opinion."); *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (ALJ reasonably rejected treating physician's opinion which "conflicted with the objective medical evidence."). It is not for this Court to reweigh the evidence the ALJ

---

[8] Lindsey takes issue with the ALJ's alleged reliance on Lindsey's work as a server and online coursework in seeking a Master's degree. Lindsey notes unsuccessful work attempts corroborate Lindsey's inability to work full time. Doc. [12] at 6 n.3 (*citing Garthus v. Sec'y of Health & Hum. Servs.*, 847 F. Supp. 675, 692-93 (D. Minn. 1993)); Doc. [20] at 3-4 (*citing Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011); *Eichhorst v. Colvin*, 2015 WL 3747267, at *7 (N.D. Ill. June 15, 2015); *David v. Colvin*, 2015 WL 6738882, at *7 (W.D. Wis. Nov. 4, 2015)). An ALJ is allowed to consider part-time work and daily activities in the big-picture evaluation of Lindsey's capabilities. *Crowell v. Kijakazi*, 72 F.4th 810, 817-18 (7th Cir. 2023) (*citing Berger v. Astrue*, 516 F.3d 539, 545-46 (7th Cir. 2008)). It is permissible to examine all evidence to assess whether testimony about the effects of impairments was credible or exaggerated. *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (permissible for the ALJ to weigh occasionally working at a family flower shop as evidence undercutting testimony of inability to work). Lindsey's work as a server and online coursework were considered holistically with daily activities and overall capabilities in assessing whether Lindsey's limitations were in line with what one would expect. *See* R. 33. Lindsey has not shown the ALJ committed reversible error in weighing this evidence.

considered above, but to ask whether the ALJ's decision exhibited a "logical bridge from the evidence to the conclusions." *Reynolds*, 25 F.4th at 473. Here, that is the case. The ALJ's finding that Dr. Childers' opinion is unpersuasive is supported by more than a mere scintilla. *Biestek*, 139 S.Ct. at 1154.

Despite this, Lindsey alleges the record contains many supportive findings that corroborate the restrictions in Dr. Childers' opinion, and that the ALJ cherry-picked evidence supporting their finding. In particular, Lindsey contends the record shows episodic exacerbations may lead to periods of absenteeism and a mischaracterization of evidence by the ALJ due to the episodic nature of mental illness. Doc. [12] at 5-7; Doc. [20] at 1-2. As stated above, an ALJ is not required to mention every piece of evidence; rather they cannot ignore an entire line of evidence supporting a finding of disability. *Combs*, 69 F.4th at 435 (7th Cir. 2023); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) ("[A]n ALJ is not required to list each document [they] considered, but must only weigh the relevant evidence."). Here, as explained above, the ALJ did not ignore an entire line of evidence or the episodic nature of mental illness. Throughout the ALJ's opinion, the ALJ discussed Dr. Childers' treatment notes from numerous visits and Lindsey's overall medical history from 2018 through 2021 in demonstrating why Dr. Childers' MIQ was unpersuasive. R 27-34. The ALJ weighed contemporaneous medical visits with other providers as well and their observations of no anxiety, depression, or agitation. *Id.* The ALJ identified Lindsey's mental health history, including her relapses with alcohol use disorder, changes to her medication, diagnosis of panic disorder, reports of low energy and anxious mood, as well as evidence of improvements, her mood being stable/good on numerous occasions,[9] Lindsey's daily activities,

---

[9] Lindsey further takes issue with the ALJ citing to non-psychiatric appointments. Doc. [20] at 1-2. Of the thirteen individual visits the ALJ cites when discussing how the record is inconsistent with Dr. Childers' treatment notes and overall record during the Paragraph B analysis (R. 27-29), one is an annual intrauterine device (IUD) checkup, and one is for a vaginal lesion. Both take note of Lindsey's psychiatric/behavior

and the lack of medical visits in 2021. *Id.* Thus, the ALJ evaluated the totality of Lindsey's treatment history, including the supportive findings. Similarly, the ALJ's analysis also demonstrated that she did not cherry-pick evidence. Indeed, Lindsey herself admits the ALJ mentioned findings of abnormal mood, including reports of anxiety and panic, in her opinion. Doc. [12] at 7 (*citing* R. 33). As outlined above, the ALJ does not discount this evidence but grapples with it and other contrary evidence when coming to her finding and the RFC determination. R. 27-34. While an ALJ opinion could always include more detail, the analysis here was sufficient. *See Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("The ALJ's analysis could well have been better, but there is no basis to overturn her determination, especially under the deferential standard controlling our review.").

Lindsey further argues that the ALJ wrongfully discredited Dr. Childers' opinion because Lindsey was orientated to person, time and place, but that Lindsey had not alleged the condition as a disability. Doc. [12] at 7; Doc. [20] at 2-3. It is Lindsey's position this exhibits a misunderstanding of her condition. *Id.* Orientation to person, time and place is a finding in the medical records that indicate normal cognition. *See e.g.*, R. 459, 688, 730, 761, 932. However, this observation cuts against Dr. Childers' MIQ finding that Lindsey has "cognitive impairment due to depression and severe anxiety." *Id.* at 678. It is a piece of evidence that can be, and was, properly weighed by the ALJ when determining the persuasiveness of Dr. Childers' opinion. *Pavlicek*, 994 F.3d at 782 (affirming an ALJ's decision weighing orientation to person, place, time, and situation at medical visits as a sign of normal cognition contrasting the treating doctor's report). As detailed above, this was one consideration of many in the totality of Lindsey's

---

mood and find them normal. The other eleven are psychiatric visits and similarly find Lindsey to have a stable/good/pleasant mood. Thus, this argument has no merit.

treatment history that corroborated the ALJ's finding that Dr. Childers' opinion was unpersuasive.[10]

Lindsey additionally, but very briefly, argues there is incomplete analysis of Dr. Childers' opinion regarding the "supportability" and "consistency" factors under 20 C.F.R. § 404.1520c(b)(2). An ALJ must explain how they considered factors of supportability and consistency in their evaluation of medical opinion evidence. 20 C.F.R § 404.1520c(b)(2). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ articulated she found Dr. Childers' MIQ unpersuasive due to the lack of support and consistency with her treatment notes and the record. As reflected above, the ALJ holistically reviewed Lindsey's treatment history and the record evidence as detailed above consistent with 20 C.F.R. § 404.1520c(b)(2). Thus, this argument does not provide a basis to reverse the ALJ's decision.

For her second contention, Lindsey alleges the ALJ misread the MIQ when she determined it provided "no precise mental residual functional limitations" and the absenteeism estimation was an "issue reserved for the Commissioner." Doc. [12] at 7-8; Doc. [20] at 4-6. Under 20 C.F.R. § 404.1527(d) certain opinions are reserved for the Commissioner because they are findings

---

[10] The Commissioner notes that even if the ALJ erred in noting Lindsey's orientation to person, place and time, it was harmless. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (emphasizing harmless error standard applies to judicial review of administrative decisions). Although this is not an error, the Court agrees it would be harmless because there is a plethora of other evidence that supports the ALJ's discounting of Dr. Childers' opinion.

dispositive of the case, including opinions that the claimant is disabled or unable to work. 20 C.F.R. § 404.1527(d)(1). Unlike the state agency consultants' report, Dr. Childers' MIQ does not provide any mental RFC. *See generally* R. 677-79. Instead, the MIQ lists Lindsey's diagnosis and states she has an "inability to work," "inability to focus, decreased concentration, inability to stay on task," "symptoms impair patient's ability to work." *Id.* Dr. Childers' also notes in answers to check-box questions that Lindsey would be absent from work "more than three times a month" and her symptoms would interfere with her attention and concentration "21% or more" in a typical workday. *Id.* The ALJ was within the bounds of reason for finding that Dr. Childers opined on an issue reserved for the Commissioner. In her opinion, the ALJ stated:

> "Dr. Childers opined that the claimant was unable to work (Exhibit 4F/1). Dr. Childers concluded that the claimant would be absent from work for more than three times a month because of impairments or treatment (Exhibit 4F/2). Statements that a claimant is disabled, unable to work, can or cannot perform a past job, meets a Listing, or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability (20 CFR 404.1527(e)(2) and 416.927(e)(2))." (*Id.* 34.)

The ALJ was entitled to discount Dr. Childers' opinion because a finding of "inability to work" or how often a claimant would be able to work is a dispositive issue of the case reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(1); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.' Under the Social Security regulations, the Commissioner is charged with determining the ultimate issue of disability."). But, even if the ALJ was incorrect in discounting the absentee time in Dr. Childers' MIQ, the ALJ still properly weighed Dr. Childers' MIQ and determined it was unpersuasive. While Dr. Childers' MIQ focuses heavily on Lindsey's anxiety, depression and suicidal ideation, the ALJ cited evidence (including

14

Dr. Childers' treatment notes) of no depression, anxiety and lack of suicidal ideation. R. 30-34 (citing 730, 746, 761, 775, 780, 796-97, 799, 901). As a result, this provided support for the ALJ's conclusions that Lindsey would not be absent from work or unable to concentrate to the degree Dr. Childers' opined. *Id.* The Court also need not parse the ALJ's sentences in this paragraph, as she identified other reasons to support her conclusion. *See Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are"). Lindsey has not demonstrated the ALJ committed reversible error when interpreting Dr. Childers' MIQ, or that the ALJ erred in discounting Dr. Childers' opinion.

## II.    RFC Assessment

Lindsey argues that the RFC is not properly constructed because it lacks medical support, failed to account for Lindsey's need for breaks, absences and workplace disruptions due to her anxiety attacks, and was inconsistent based on a finding of moderate impairment in concentration, persistence and pace. Doc. [12] at 8-11; Doc. [20] at 6-9. The ALJ determined Lindsey had the RFC to perform a full range of work at all exertional levels with non-exertional limitations as follows: (1) can perform simple, routine, and repetitive tasks; (2) can make simple work-related decisions; (3) can work at a consistent pace throughout the workday but cannot perform production rate/pace work where tasks must be done quickly such as assembly line work; (4) can occasionally interact with supervisors, co-workers, and the public incidental to the work being performed and no group or team-based activities; and (5) can respond appropriately to occasional, gradual changes in a routine work setting. R. 29-34.

The RFC is the most physical and mental work that Lindsey can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). An ALJ assesses an RFC based on all relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). In reaching her RFC assessment, the ALJ must "articulate

at some minimal level [her] analysis of the evidence." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Ultimately, "an ALJ need only include limitations [in the RFC] that are supported by the medical record." *Reynolds*, 25 F.4th at 473. An ALJ has the "final responsibility" for determining a claimant's RFC. *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021). In general, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

First, Lindsey asserts that the ALJ discounted all medical opinions, creating an evidentiary deficit. Doc. [12] at 8-10; Doc. [20] at 6. An evidentiary deficit is created when an ALJ rejects all opinion evidence, and the remainder of the record does not support the limitations in the RFC. *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010). Here, the ALJ's review of the medical opinion evidence demonstrated that the ALJ did not reject all opinion evidence. *See* R. 27-29. Instead, the ALJ explicitly found the opinions of the state agency medical consultants persuasive with respect to their opinions on claimant's limitations with interacting with others, and concentrating, persisting or maintaining pace. *Id.* As a result, the ALJ took parts of the state agency medical consultants' mental opinions in crafting their RFC, including:

> "Claimant is oriented and does not have marked memory impairment. They are independent in activities of daily living. This Claimant has the mental capacity necessary for remembering work locations and general work related procedures. … This Claimant retains sufficient attention and concentration to persist at and complete work activities for the usual periods required in the general work force…Psychologically based symptoms will not markedly impair their capacity to complete a normal work week. This Claimant's 3P has alleged limited social tolerance therefore they would do best in a socially undemanding and restricted setting that requires reduced interpersonal contact, away from the public. They could relate acceptably with a supervisor and coworkers to minimally necessary degree." *Id.* at 90-91, 107-108, 129.

Moreover, the ALJ crafted a more restrictive RFC than that recommended by the state agency consultants when viewing the totality of the record and weighing the competing evidence.  For example, the ALJ considered the medical opinions of the state agency psychological consultants in finding Lindsey had no limitation in understanding remembering or applying information. *Id.* at 27-28 (*comparing id.* 77-110, 113-133 *with id.* 459, 698, 715, 746, 752, 765, 769, 939).  Upon reviewing the record as a whole, the ALJ determined a moderate limitation was appropriate and as a result included in the RFC a limitation that Lindsey "can perform simple, routine, and repetitive tasks and can make simple-work related decisions." *Id.* at 28.  Similarly, for adapting and managing oneself, the state agency psychological consultants found that Lindsey had a mild limitation, but the ALJ determined that a moderate limitation was needed based on the function report and record. *Id.* (*citing* 316-17).  As a result, the ALJ included an additional limitation that Lindsey "cannot perform production rate/pace work where tasks must [occur] quickly such as assembly line work" and "no group or team based activities." *Id.* at 27-34.  Thus, the ALJ was not faced with an evidentiary deficit because the ALJ did not reject all opinion evidence; instead she weighed medical opinions and evidence in crafting a more restrictive RFC.[11] *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (an accommodation that is "more limiting than that of any state agency doctor or psychologist, illustrat[es] reasoned consideration given to the evidence."); *see also Karla J.B. v. Saul*, 2020 WL 3050220, at *4 (N.D. Ill. June 8, 2020) ("Essentially, Plaintiff argues the ALJ erred by placing more—not fewer—restrictions on Plaintiff's RFC. Again, this is a quizzical argument.")

---

[11] Lindsey also argues the ALJ "never explained her determinations for the RFC provided, she merely stated that the finding was '[b]ased on the foregoing.'" Doc. [12] at 10. However, "[t]he foregoing" includes detailed discussion about claimant's alleged limitations, including discussion of the medical record and claimants own statements about daily activities. R. 27-34.

Second, Lindsey asks the Court to reexamine the RFC limitations the ALJ drafted because she believes they are not connected to the evidence in violation of SSR 96-8p. Doc. [12] at 8-9; Doc. [20] at 6-9. Specifically, Lindsey argues that the RFC failed to account for breaks, absences, workplace disruptions or off-task time due to anxiety attacks. *Id.* SSR 96-8p requires an ALJ to discuss the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, eight hours a day, for five days a week, or an equivalent work schedule). SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "But [the Court] may affirm an ALJ's decision that does not conform with SSR 96-8p's requirements if we are satisfied that the ALJ built an accurate and logical bridge from the evidence to [their] conclusion." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quotation marks omitted); *see also Whitehead v. Saul*, 841 F. App'x 976, 982-83 (7th Cir. 2020) (affirming where the ALJ derived his restrictions from two sources).

In crafting the RFC, as explained above, the ALJ reviewed Lindsey's medical history with bipolar disorder, panic disorder, generalized anxiety disorder and alcohol abuse disorder. The ALJ then stated Lindsey's "statements about the intensity, persistence, and limiting effect of her symptoms [] are not supported by evidence." R. 32. The ALJ explained that, at hearing, Lindsey testified to manic depression for the last 6-8 months, but during an August 2020 examination her mental status was normal. *Id.* (*citing* 939). The ALJ reiterated the lack of medical visits in 2021 and lack of psychiatric hospitalization since the alleged disability onset. *Id.* at 32; *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) ("[C]laimant bears the burden of producing medical evidence that supports her claims of disability."). In addition, the ALJ observed Lindsey's medication had not changed numerous times and the medical records documented a general positive effect from the medications, contrary to Lindsey's testimony. *Id.* at 32. The ALJ noted

that Lindsey was also not always compliant with treatment, drinking on medication, and missing AA meeting to care for her boyfriend's daughter. *Id.* at 32-33. Finally, the ALJ evaluated Lindsey's described daily activities, noting they are "not as limited as one would expect given the complaints of disabling symptoms and limitations." *Id.* at 33. With all of this, the Court can trace the path of the ALJ's reasoning and the ALJ's RFC is supported by more than a mere scintilla of evidence.

Third, Lindsey argues that the ALJ's RFC finding was inconsistent because it found a moderate impairment in concentration, persistence and pace but only precluded Lindsey from jobs that required a quick rate/pace. Doc. [12] at 10-11; Doc. [20] at 8-9. The crux of her argument is by only precluding quick rate/pace work, this is finding no limitation at all. *Id.* The Court starts by noting that the rate/pace limitation is already a higher limitation than what is in the state agency consultants' RFC. R. 90-91, 107-108, 129 ("Claimant retains sufficient attention and concentration to persist at and complete work activities for the usual periods… capacity for adequate pace and perseverance to maintain a schedule and on time attendance and has the capacity to complete a normal workday"). And there is nothing inconsistent about the RFC. The ALJ's RFC determination properly limits concentration, by requiring simple tasks, procedures and decisions, and pace, by limiting work to non-production rate/pace work where tasks are done quickly, consistent with the ALJ's moderate impairment finding. R. 29-34; *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) (remanding on other grounds) (finding a mental RFC was tailored regarding concentration, persistence and pace when limiting claimant to simple tasks, procedures, and decisions, finding that production requirements would be met, and that claimant would need "flexibility and work requirements that were goal-oriented.") This argument also has no merit.

19

### III.    Subjective Symptoms

Lindsey contends that the ALJ's evaluation of her symptoms violated SSR 16-3p and was not supported by substantial evidence. Doc. [12] at 11-14; Doc. [20] at 9-11.  Under this banner, Lindsey asserts that the ALJ's comments and demeanor at her hearing demonstrated a perceived bias towards her and denied a full and fair hearing in violation of SSR 16-3p.  The standard for finding reversible error with regard to an ALJ's alleged bias "is an exacting one." *Kieth v. Barnhart*, 473 F.3d 782, 788 (7th Cir. 2007).  The Court reviews evidence "with the presumption that the hearing officer is unbiased." *Id.* (citing *Schweiker v. McClure*, 456 U.S. 188, 195 (1982)) (additional citations omitted).  The presumption is rebutted only if the appellant demonstrates "that the decisionmaker 'displayed deep-seated and unequivocal antagonism that would render fair judgment impossible.'" *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 556 (1994)).

Specifically, Lindsey takes issue with the ALJ's comments, as follows:

- "Okay. Ms. Blackwell, we've got somebody who don't remember what year they graduated. How are we supposed to get through this hearing? But maybe their memory will be fine to the other things though. She doesn't remember what year she graduated. I'm not sure how we're going to get through this hearing. That's a bit extreme to me." R. 55.

- "So, you just told me you weren't always honest with [your providers], but today you're going to be honest about what's going on? I can't help you mentally or physically. I can just decide whether you get a check or not . . . So, why be honest today with me to get a check, but not be honest with your providers who can help you." *Id.* at 50.

"[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555.  Such remarks, including "expressions of impatience, dissatisfaction, annoyance, and even anger" typically do not meet the threshold. *Id.* at 555–56. While the above statements could have been phrased better, the ALJ was remarking about Lindsey's credibility, including her inability to recall basic facts and her past statements to

20

providers. These statements, alone, do not rise to the extreme conduct of deep-seated and unequivocal antagonism necessary to sustain a claim of bias. *Keith*, 473 F.3d at 789-90.

Lindsey next asserts that the ALJ did not properly evaluate her daily activity restrictions. Doc. [12] at 13-14. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts*, 27 F.4th 1273, 1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278. Lindsey claims the ALJ did not consider that she failed her semester of online school, she would go long periods of time without leaving bed, and had difficulty watching television. Doc. [12] at 13-14.

In her decision, the ALJ explained that Lindsey's statements about the intensity, persistence, and limiting effects of her symptoms were not supported by evidence. R. 32. In weighing Lindsey's daily activities, the ALJ noted they were "not limited to the extent one would

expect, given the complaints of disabling symptoms and limitations." *Id.* at 33. The ALJ went on to describe numerous tasks exhibited in the record that Lindsey participated in, including "going to college online for her Master's degree… and watches television." *Id.* The ALJ was entitled to consider this evidence, even if the events described were not entirely successful. That is, even if Lindsey failed her semester of online school, the ALJ could consider that she attended school. *Alvarado*, 836 F.3d at 750 (permissible to examine all evidence to assess whether testimony about the effects of impairments were credible or exaggerated). Similarly, the ALJ was entitled to consider that Lindsey watched television, even though it was difficult. And while the ALJ did not directly mention Lindsey staying in bed for long periods of time, an ALJ need not discuss every detail. *Grotts*, 27 F.4th at 1278. As outlined above, the ALJ weighed Lindsey's testimony, daily activities, treatment history and medical record in determining the credibility of her symptoms. The ALJ reviewed Dr. Childers' treatment notes, observing that Lindsey often reported having a good/stable mood, no suicidal ideation and that AA meetings were helpful to her recovery. R. 27-34. The ALJ acknowledged contemporaneous medical visits with other providers, indicating Lindsey often reported no depression, anxiety or agitation. *Id.* The ALJ also observed a lack of medical visits in 2021. *Id.* The ALJ further remarked on Lindsey's contradictory hearing testimony, noting Lindsey's medication did not change frequently and had a positive effect. *Id.* Additionally, the ALJ recognized a myriad of daily activities Lindsey participated in based on the medical records and Lindsey's function report, including feeding the dog, preparing food, cleaning, grocery shopping, and running. *Id.* Based on the totality of this evidence and a holistic analysis, the ALJ concluded the intensity, persistence, and effects of Lindsey's symptoms were not supported by the evidence. *Grotts*, 27 F.4th at 1279. Overall, the ALJ's evaluation of Lindsey's symptoms was not patently wrong.

## **CONCLUSION**

For the reasons stated above, Plaintiff's request for reversal of the ALJ's decision is denied [12], the Acting Commissioner's Motion for Summary Judgment [18][19] is granted, and the ALJ's decision is affirmed. The Clerk is directed to enter judgment in favor of the Acting Commissioner and against Plaintiff.

**SO ORDERED.**

Dated: September 29, 2023

Sunil R. Harjani
United States Magistrate Judge